**EXHIBIT A**

**PLAINTIFF'S ORIGINAL PETITION**



CAUSE NO: 22-DCV-293515

| | | |
|---|---|---|
| **Randy Demon Wilkins**<br>**Plaintiff**<br><br>VS.<br><br>**Southeast Independent**<br>**Delivery Services (SEIDS), and**<br>**Rooms To Go Furniture**<br>**Corp;**<br>**Defendants** | §§§§§§§§§§§§ | IN THE DISTRICT COURT OF<br><br>FORT BEND COUNTY, TEXAS |

## PLAINTIFF'S ORIGINAL PETITION
## RULE 194 REQUEST FOR DISCLOSURE AND NOTICE

TO THE HONORABLE JUDGE OF SAID COURT:

Plaintiff RANDY DEMON WILKINS complains of Defendants Southeast Independent Delivery Services (SEIDS) and Rooms To Go Corp and will respectfully show this court as follows:

### DISCOVERY CONTROL PLAN

Discovery is intended to be conducted under Level 3 of Rule 190 of the Texas Rules of Civil Procedure. Once Defendants are served and answer, counsel for Plaintiff will ask the Court to enter a Discovery Control Plan pursuant to Rule 190.4.

### PARTIES

A. Plaintiff RANDY DEMON WILKINS is a resident of Houston, Harris County, Texas.

B. Defendant Southeast Independent Delivery Services(SEIDS) is a foreign company with its national headquarters in Lakeland, FL. Defendant is licensed to do business in the State of Texas and actively engages in

business in Texas. This case arises out of specific actions taken by Defendant in the State of Texas. Defendant SEIDS may be served with process and a copy of Plaintiff's Original Petition, Rule 194 Requests for Disclosure and Plaintiff's Rule 193.7 Notice through its agent for service of process: Ct Corporation System; 1999 Bryan Street, Suite 900; Dallas, Texas 75201.

C. Defendant Rooms To Go Corp is a foreign company with its national headquarters in Seffner, FL. This case arises out of specific actions taken by Defendant in the State of Texas. Defendant Rooms To Go may be served with process and a copy of Plaintiff's Original Petition, Rule 194 Requests for Disclosure and Plaintiff's Rule 193.7 Notice through its agent for service of process: Legal Department, 11540 US Hwy 92 E, Seffner, Fl 33584.

## JURISDICTION AND VENUE

This case is within the jurisdiction of Texas District Courts as defined by Article V, Section 8 of the Texas Constitution. This Court has original jurisdiction as the amount in controversy is more than $500, exclusive of interest.

Venue is proper in Fort Bend County, Texas pursuant to Tex. Civ. Prac. & Rem. Code §15.002(a)(1), as this is the county in which all or a substantial part of the events or omissions giving rise to the claim occurred. Venue is also proper against Defendants SEIDS and Rooms To Go pursuant to Tex. Civ. Prac. & Rem. Code §15.005, as this lawsuit arises out of the same occurrence and a county that is the proper venue for

one defendant is the proper venue for a cause of action against multiple defendants if the claims against all defendants arise out of the same occurrence.

## Statements Of Facts

1. On May 28, 2020 the plaintiff Randy Wilkins was under contract working as an independent contractor to deliver furniture for the defendants Rooms To Go and Southeast Independent Delivery Services (SEIDS).

2. Rooms To Go is a furniture selling company and SEIDS is a trucking company who on May 28, 2020 was sub-contracted to deliver furniture for Rooms To Go.

3. On May 28, 2020 the plaintiff Randy Wilkins had to deliver 9 pieces of furniture at 3315 Flint Valley Lane in Katy, Texas for the defendants Rooms To Go and SEIDS.

4. During the delivery of the 9 pieces of furniture, the plaintiff Randy Wilkins slipped as he and a helper attempted to take a big heavy box up the stairs in the house.

5. The slip caused the plaintiff to fumble the big heavy box, yet he was able to hold on to it to prevent it from falling on him and damaging any property.

6. The plaintiff immediately felt pain from both of his shoulders pulling during this episode.

7. The exact cause of the slip was the very inefficient, unsafe slippery shoe covers that were provided by the defendants to wear on the plaintiff's shoes.

8. The defendants required and enforced that the plaintiff wear the slippery shoe covers during all deliveries, no matter a safer reason not to, or rather the customer insisted or not, and without training on how to wear the unsafe, inefficient slippery shoe covers.

9. The plaintiff went through weeks of training that was provided by the defendants, however the defendants failed to train the plaintiff on how to wear inefficient slippery shoe covers while carrying a heavy box upstairs.

10. On May 29, 2020 after awakening to barely being able to move his arms, the plaintiff contacted Shawn Stallings, SEIDS supervisor/manager, to notify him that he had injured both of his shoulders on one of the routes the day before and needed to go to the doctor.

11. On May 29, 2020 plaintiff went to the Injury Center Of Houston for medical attention and was initially diagnosed as having strains in both shoulders, however MRI results later revealed that the plaintiff had 2 tears in each shoulder.

12. Since injuring his shoulders on May 28, 2020 the plaintiff has had to go through a tremendous amount of pain and suffering. He has received subacromial injections in his right shoulder and has had surgery on his left shoulder.

13. The plaintiff has had to endure the loss of the quality and enjoyment of life due to the injury to both of his shoulders.

14. The plaintiff has suffered through eviction notices and property losses from excess wage loss due to the negligence of the defendants requiring the plaintiff to wear slippery inefficient shoe covers.

15. The plaintiff contends that before the incident he was a healthy adult male who had passed 2 recent physicals. However, since the incident the plaintiff has lost his Commercial Drivers License due to the fact that the plaintiff wasn't able to renew his CDL Medical Certification due to his shoulders being injured from wearing the slippery shoe covers.

16. The plaintiff contends that he suffered through emotional and mental distress because of the injury and the treatment by the defendant SEIDS illegally terminating the contract because of the injury and not paying him his bonds and bonuses.

## Causes Of Action

17. As a worker, working under the complete direction, and in uniform, for the defendants, they owed the plaintiff a duty of care and a safe working environment.

18. The defendants breached that duty of care and violated the plaintiff's rights to a safe working environment when they made the plaintiff wear inefficient slippery

shoe covers that they provided, which caused him to slip and severely injure himself while carrying heavy furniture upstairs. As well as not train him on how to wear slippery shoe covers while carrying heavy furniture upstairs.

19. This breach of duty is gross negligence by the defendants and it was the proximate cause of the plaintiff's injuries and damages.

20. Defendant SEIDS is in violation of breach of contract for terminating the contract of the plaintiff delivering furniture stating the reason is: "(**4-D**)…conduct by Contractor which puts, or threatens to put, Independent Delivery in default of its contractual obligations with its customers Agreement."

21. The plaintiff has video evidence that the defendant SEIDS illegally breached the contract because he got injured.

22. The breach of contract by the defendant SEIDS is also a cause of plaintiff's lost wages, bonds, and bonuses.

## Monetary Relief

23. Due to the damages by the defendants, the plaintiff seeks monetary relief over $1,000,000.

24. The total of Plaintiff Randy Demon Wilkins' damages, past and future, are within the jurisdictional limits of this Honorable Court.

## RULE 194 REQUEST FOR DISCLOSURE

25. Pursuant to Rule 194.2 (a) of the Texas Rules of Civil Procedure, each Defendant is requested to disclose, within 30 (thirty) days of service of this request, the information or material described in Rule 194.2, 194.3, and 194.4.

## NOTICE

26. Pursuant to Texas Rules of Civil Procedure, this will serve as actual notice that Plaintiff intends to use produced documents against Defendants in pretrial proceedings and at trial. Accordingly, production of a document(s) in response

to this Request for Disclosure authenticates the document(s) for use against Defendants in any pretrial proceeding or at trial unless a Defendant objects to the authenticity of any produced document(s) within the time limits as particularly set out in Texas Rules of Civil Procedure.

## Prayer

WHEREFORE, Plaintiff prays that citation be issued and served upon Defendants in the form and manner prescribed by law, requiring that Defendants appear and answer herein; that upon final hearing hereon, Plaintiff have judgment against Defendants, jointly and severally for total monetary relief of more than $1,000,000; pre-judgment interest as allowed by law; post-judgment interest; all costs of court; and all other relief to which Plaintiff may be justly entitled.

Respectfully submitted,

By: _____  5/17/2022
PLAINTIFF                                   DATE
Randy Wilkins

## `Equipment Lease and Truckman's Agreement

This agreement is made in the County of ___WALLER___, State of ___TEXAS___, between SE Independent Delivery Services, Inc., ("INDEPENDENT DELIVERY"), a Florida Corporation and ___RANDY DE'MON WILKINS___ (name) ___N/A___ (D.B.A.) ("CONTRACTOR"), as follows:

1. **CONTRACTOR'S Services.** During the term of this Agreement, CONTRACTOR shall provide INDEPENDENT DELIVERY professional truck-driving services and the use of the Equipment, defined in Section 2, as well as perform such other incidental transportation and/or delivery related services as may be necessary to serve INDEPENDENT DELIVERY's customers, including but not limited to assembly of furniture.

2. **Lease.** Pursuant to 49 C.F.R. Section 376.11(a), CONTRACTOR leases to INDEPENDENT DELIVERY and INDEPENDENT DELIVERY leases from CONTRACTOR the equipment ("Equipment") described in **Exhibit A**. CONTRACTOR may substitute a unit of equipment other than the Equipment on a short-term basis (i.e., 14 days or less) without updating **Exhibit A**, but substitutions of Equipment intended to last the remainder of the Agreement's term must be documented in **Exhibit A**. CONTRACTOR represents and warrants that CONTRACTOR has title to or is authorized to contract the Equipment and services to INDEPENDENT DELIVERY. Upon taking possession of the Equipment from CONTRACTOR, INDEPENDENT DELIVERY shall furnish to CONTRACTOR a receipt for Equipment, which shall constitute the receipt required by 49 C.F.R. § 376.11(b). Upon termination of this Agreement, CONTRACTOR shall execute a similar receipt for equipment as the written receipt for the return of the Equipment by INDEPENDENT DELIVERY to CONTRACTOR; provided, however, that the Agreement and INDEPENDENT DELIVERY's obligations thereunder shall expire upon the written notice of termination regardless of whether CONTRACTOR submits the receipt required under this provision.

3. **Duration.** This Agreement shall begin on the Effective Date and ends on the Termination Date indicated just above the signature block after the main text of this Agreement. Either party may terminate this Agreement for any reason by giving twenty (20) days written notice to that effect to the other party either personally, by mail, at the address shown at the end of this Agreement, or by electronic means pursuant to Section 33 of this Agreement. The parties each recognize and agree that CONTRACTOR's failure to provide INDEPENDENT DELIVERY with at least 20 days' prior written notice of termination would cause direct and indirect costs for INDEPENDENT DELIVERY that are impossible to quantify in advance, including, but not limited to, damages resulting from INDEPENDENT DELIVERY's inability to timely secure qualified and comparable replacement capacity and damage to INDEPENDENT DELIVERY's reputation with its customers. In light of this, CONTRACTOR agrees, if it fails to provide INDEPENDENT DELIVERY with at least 20 days' prior written notice of termination, CONTRACTOR will pay INDEPENDENT DELIVERY, as liquidated damages and not as a penalty, $4,000. INDEPENDENT DELIVERY is authorized to deduct or otherwise recover such liquidated damages.

4. **Termination.** This Agreement may be terminated:

   a. at any time by mutual consent evidenced in writing;

   b. without cause upon either party providing written notice to the other party of the termination twenty (20) days prior to the termination;

   c. for failure by INDEPENDENT DELIVERY or CONTRACTOR to perform any of the provisions of this Agreement and such failure continues for a period of ten (10) days after written notice of default;

   d. at any time for conduct by CONTRACTOR which puts, or threatens to put, INDEPENDENT DELIVERY in default of its contractual obligations with its customers; or

   e. at any time upon material breach of this Agreement by either of the parties. A material breach of this Agreement is the violation of any federal, state or local law, regulation, or ordinance, or the failure to perform or comply with any provision of this Agreement relating to safety, Federal Motor Carrier Safety Regulations, or contractor general duties.

   All notice required pursuant to subsections (a)-(e) above may be sent either personally, by mail, at the address shown at the end of this Agreement, or by appropriate electronic means pursuant to Section 33 of this Agreement. The ability of either party to terminate this Agreement shall in no way be interpreted as an at-will employment provision and shall not otherwise affect CONTRACTOR's status as an independent contractor under this Agreement. The effective date and time of termination shall be as set forth in the written notice if sent electronically or delivered personally and 2 days after mailing if mailed, or the receipt for Equipment issued by CONTRACTOR, whichever date is earlier. CONTRACTOR shall, upon the termination of this Agreement, remove all INDEPENDENT DELIVERY identification from the Equipment and return it to INDEPENDENT DELIVERY, via hand delivery or certified mail, together with all of INDEPENDENT DELIVERY's property, including trailers, paperwork, load securement equipment and freight, to INDEPENDENT DELIVERY's nearest terminal. If CONTRACTOR fails to return INDEPENDENT DELIVERY's property or freight to INDEPENDENT DELIVERY or remove and return all INDEPENDENT DELIVERY identification from the Equipment upon termination of this Agreement, CONTRACTOR shall pay INDEPENDENT DELIVERY, all collections costs incurred by INDEPENDENT DELIVERY, including reasonable attorney fees, and INDEPENDENT DELIVERY may pursue all other remedies allowed by law or authorized in the Agreement against CONTRACTOR.

5. **Gross Compensation & Settlement Period.**



The information for ACE is in your accident kit in your binder. I have also included a PDF copy here.

Thank You,

Shawn Stallings

210-389-6044

**From:** Demon Wilikins <demonwilikns@gmail.com>
**Sent:** Friday, May 29, 2020 11:54 AM
**To:** Shawn Stallings <SStallings@seids.com>
**Subject:** !External!

I injured both my shoulders yesterday at one of my stops. I need to initiate an worker's compensation claim. I can barely lift my arms to drive.



pg. 9 ACE CLAIM SHEET.pdf
PDF

↩ Reply    ↩ Reply all    → Forward



Employee - You are required to report your injury to your employer within 30 days if your employer has workers' compensation insurance. You have the right to free assistance from the Texas Department of Insurance, Division of Workers' Compensation (DWC) and may be entitled to certain medical and income benefits. For further information call DWC at 800-252-7031.

Empleado - Es requerido que usted reporte su lesión a su empleador dentro de 30 días si es que su empleador cuenta con un seguro de compensación para trabajadores. Usted tiene derecho a recibir asistencia gratuita por parte del Departamento de Seguros de Texas, División de Compensación para Trabajadores (DWC), y es posible que tenga derecho a recibir ciertos beneficios médicos y de ingresos. Para obtener más información llame a DWC al 800-252-7031.

**DWC073**

## Texas Workers' Compensation Work Status Report

### I. GENERAL INFORMATION
Date Sent (for transmission purposes only): 05/29/2020

1. Injured Employee's Name: Wilkins Randy
2. Date of Injury: 05/28/2020
3. Social Security Number (last four) XXX-XX- 1187
4. Employee's Description of Injury/Accident: shoulder injury moving furniture
5a. Doctor's/Delegating Doctor's Name and Degree: Cameron L, Jackson D.C.
5b. PA / APRN Name (if completing form):
6. Facility Name: Injury Center Of Center
7. Facility/Doctor Phone and Fax Numbers: Tel:281-919-1095 Fx:281-919-2479
8. Facility/Doctor Address (Street, City, State, ZIP Code): 12941 North Freeway, Suite 216, Houston, Tx 77060
9. Employer's Name:
10. Employer's Fax Number or Email Address (if known):
11. Insurance Carrier:
12. Carrier's Fax Number or Email Address (if known):

### II. WORK STATUS INFORMATION (Fully complete one box including estimated dates, and a description in 13c, if applicable)

13. The injured employee's medical condition resulting from the workers' compensation injury:

☐ a) will allow the employee to return to work as of ___/___/___ without restrictions; OR

☐ b) will allow the employee to return to work as of ___/___/___ with the restrictions identified in PART III, which are expected to last through ___/___/___; OR

☑ c) has prevented and still prevents the employee from returning to work as of 05/29/2020 and is expected to continue through 06/05/2020.

The following describes how this injury prevents the employee from returning to work: Acute injury

### III. ACTIVITY RESTRICTIONS (Only complete if box 13b is checked)

14. Posture Restrictions (if any):
Max hours per day 0 2 4 6 8 Other:
- Standing
- Sitting
- Kneeling/squatting
- Bending/stooping
- Pushing/pulling
- Twisting
- Other:

15. Restrictions Specific To (if applicable):
☐ Left hand/wrist   ☐ Left leg
☐ Right hand/wrist  ☐ Right leg
☐ Left arm          ☐ Back
☐ Right arm         ☐ Left foot/ankle
☐ Neck              ☐ Right foot/ankle
Other:

16. Other Restrictions (if any)

17. Motion Restrictions (if any):
Max hours per day 0 2 4 6 8 Other:
- Walking
- Climbing stairs/ladders
- Grasping/squeezing
- Wrist flexion/extension
- Reaching
- Overhead reaching
- Keyboarding
- Other:

18. Lift/Carry Restrictions (if any):
☐ May not lift/carry objects more than ___ lbs. for more than ___ hours per day.
☐ May not perform any lifting/carrying.
☐ Other:

19. Misc. Restrictions (if any):
Max hours per day of work:
- Sit/stretch breaks of ___ per ___
- Must wear splint/cast at work
- Must use crutches at all times
- No driving/operating heavy equipment
- Can only drive automatic transmission
- No skin contact with:
- No running
- Dressing changes necessary at work
☐ No work / ___ hours/day work:
   ☐ in extreme hot/cold environments
   ☐ at heights or on scaffolding
☐ Must keep ___
   ☐ elevated  ☐ clean & dry

20. Medication Restrictions (if any):
☐ Must take prescription medication(s)
☐ Advised to take over-the-counter meds
☐ Medication may make drowsy (possible safety/driving issues)

### IV: TREATMENT/FOLLOW-UP APPOINTMENT INFORMATION

21. Work Injury Diagnosis Information:
L shoulder strain
R shoulder strain

22. Expected Follow-up Services Include:
☑ Evaluation by the treating doctor on 06/05/2020 at ___:___ a.m./p.m.
☐ Referral to/consult with ___ on ___/___/___ at ___:___ a.m./p.m.
☐ Physical medicine ___ X per week for ___ weeks starting on ___/___/___ at ___:___ a.m./p.m.
☐ Special studies (list): ___ on ___/___/___ at ___:___ a.m./p.m.
☐ None. This is the last scheduled visit for this problem. At this time, no further medical care is anticipated.

Date/Time of Visit: 05/29/2020
Discharge Time:
Employee's Signature: [signed]
Health Care Practitioner's Signature/License #: [signed]

Visit Type:
☑ Initial
☐ Follow-up

Role of Health Care Practitioner:
☑ Treating doctor
☐ Referral doctor
☐ RME doctor
☐ Consulting doctor
☐ PA
☐ APRN
☐ Designated doctor
☐ Other doctor

DWC073 Rev. 09/19

Page 1 of 2



## ONE STEP DIAGNOSTIC
Finally, one step for all your imaging needs

11221 Katy Fwy #201 Houston, TX 77079   PH: 713-461-7272   FX: 713-461-7274

| | | | |
|---|---|---|---|
| **PATIENT:** | WILKINS, RANDY | **DATE OF SERVICE:** | 05/20/2021 4:14 PM |
| **DOB:** | 03/09/1978 | **EXAM DESCRIPTION:** | MRI - LEFT SHOULDER W/O |
| **MRN:** | 471626 | **REFERRING PHYSICIAN:** | Jackson, Cameron |
| **ACCESSION:** | 2123194-1 | **INSTITUTION** | One Step Diagnostic Red Oak |

**Exam:** MRI of the left shoulder without contrast

**Clinical information:** Shoulder pain after moving furniture

**Technique:** Multiplanar, multisequence imaging of the left shoulder was performed without contrast.

**Findings:**

There is a type I acromion in normal position. The acromioclavicular joint shows moderate joint space narrowing, fibrous capsular overgrowth and osteophyte formation. There is moderate bone marrow edema surrounding the acromioclavicular joint.

There is a moderate amount of fluid in the subacromial/subdeltoid bursa. The subcoracoid bursa contains a small amount of fluid and there is also a small shoulder joint effusion.

There is a full-thickness tear at the distal attachment of the supraspinatus tendon with 1.2 cm proximal retraction.

Along the bursal surface of the distal infraspinatus tendon, there is a 10 mm length partial thickness tear estimated at 25% in thickness. There is also an 11 mm length partial thickness tear at the distal insertion of the infraspinatus tendon estimated at 25% in thickness.

The teres and subscapularis tendons are intact with no partial or full thickness tears. The rotator cuff muscles are normal in caliber with no atrophy, fatty infiltration or intramuscular edema.

The biceps tendon is located in the bicipital groove without subluxation. The biceps labral complex is intact. The superior, anterior and posterior labrum demonstrate normal morphology with normal signal intensity. No labral tears are visualized. The superior, middle and inferior glenohumeral ligaments are intact.

The glenohumeral joint is well maintained. There are no suprascapular or spinoglenoid notch cysts. The subcutaneous tissues are unremarkable.

**Impression:**

1. A moderate amount of fluid in the subacromial/subdeltoid bursa and a small amount of fluid in the








US POSTAGE — PITNEY BOWES
ZIP 77469 $ 007.73
02 4W
0000369802 MAY 20 2022

CERTIFIED MAIL

9414 7266 9904 2189 5439 46
RETURN RECEIPT REQUESTED

ROOMS TO GO CORP
C/O LEGAL DEPARTMENT
11540 US HWY 92 E
SEFFNER, FL 33584

**BEVERLEY MCGREW WALKER**
District Clerk
Fort Bend County, Texas
301 Jackson Street, Room 101
Richmond, Texas 77469

Physical: 1422 Eugene Heimann Circle
Richmond, TX 77469

**OFFICIAL BUSINESS**
Penalty for Private Use